WALTER A. STEWART, ADMINISTRATOR (ESTATE OF MARION B. JAVERY) *v.* FEDERATED DEPARTMENT STORES, INC., ET AL.
(15124)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and F. X. HENNESSY, Js.

Argued May 25—decision released August 1, 1995

*Michael A. Dowling*, with whom were *Kevin J. Gumpper* and, on the brief, *Shelagh M. Neary*, for the appellant (named defendant).

*Richard A. Silver*, with whom were *John D. Josel* and, on the brief, *Jonathan L. Mannina*, for the appellee (plaintiff).

BERDON, J. The defendant Federated Department Stores, Inc. (defendant), appeals from the refusal of the trial court to set aside the verdict against it awarding the plaintiff, Walter A. Stewart as administrator of the estate of the decedent, Marion B. Javery, damages for her wrongful death. Javery, a business invitee of the defendant, was murdered by a third party, Bernard Williams, in a parking garage in Stamford that was owned and operated by the defendant in connection with its retail store, Bloomingdale's.

The jury found for the plaintiff and awarded damages in the amount of $1,507,310 for the wrongful death of the decedent.[1] The trial court denied the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict and rendered judgment on the verdict. The defendant appealed[2] raising two issues: (1) whether the trial court properly instructed the jury on the issue of proximate cause; and (2) whether the trial court should have granted the defendant's motion

[1] The jury awarded economic damages in the amount of $7310, and $1,500,000 in noneconomic damages.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The plaintiff cross appealed asserting that the court had improperly struck the plaintiff's count sounding in recklessness. Subsequently, on October 13, 1994, the plaintiff withdrew its cross appeal.

for judgment notwithstanding the verdict on the ground that, as a matter of law, the death of Javery was the result of a superseding intervening cause. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 6, 1988, Javery was shopping in Bloomingdale's department store. After finishing shopping, Javery returned to her car, which was parked on the ground floor of Bloomingdale's garage. As she was placing her purchases in her trunk, Williams, an individual with no connection to the defendant, approached her from behind to rob her. When Javery resisted, Williams repeatedly stabbed her, leaving her to die on the garage floor. Before fleeing, Williams took Javery's purse and packages and her watch, which he ripped from her arm.

At the time of Javery's murder and robbery, no security guard was on duty in the garage. In fact, it was the defendant's practice to maintain minimal security in the garage. Bloomingdale's, with gross annual sales of forty million dollars, employed five security officers to guard its in-store property, while employing only one security officer to guard customer and employee safety in the garage. Moreover, the security guard assigned to the three story, 985 car facility was regularly reassigned to guard the loading dock and was not replaced while absent from his or her post. Consequently, the garage was frequently left unsecured, which was the case at the time of Javery's death.

Additionally, the garage was not constructed or maintained in a manner that provided security to the store's customers. Lighting was dim, with 300 fluorescent light fixtures inoperative on the day that Javery was murdered. Furthermore, there were no gates at either the vehicular or pedestrian entrances, nor was the facility fully fenced or enclosed on the ground level.

Geographically, the store and its garage are located in a neighborhood of Stamford that is reputed for its high crime rate. The crimes committed in the area spanned the spectrum of violence from larceny and robbery to rape and murder. Within the ten months prior to Javery's death, over 1000 serious crimes were committed within an area of two blocks from the garage. More specifically, Javery's murder was not the first crime to occur in Bloomingdale's garage. Prior to her attack, customers had been robbed at knifepoint and assaulted in the garage. Indeed, as in this case, several customers and employees had been robbed at knifepoint in the garage when there was no security guard on duty. Additionally, the garage was regularly the site of larcenies from parked cars, theft of cars and vandalism. In recognition of the criminal activity in and about the garage, the defendant's employees repeatedly requested the management to increase security in the garage. The defendant, however, took no steps to provide additional security.

Furthermore, the defendant, as informed by its own security personnel, was aware of the security problem in its garage and the remedial steps that were necessary to correct it. In 1982, Kevin Lash, the security manager for the Stamford Bloomingdale's, after reviewing the crime problem in and about the garage, recommended that an additional guard was required and that the garage should be fully enclosed with fencing. Management, however, rejected this proposal.

Neil A. Sullivan, an expert in the field of security, appeared as an expert for the plaintiff. He testified that the defendant had failed to assess the danger to which its customers and employees were exposed in the parking garage. After reviewing the history of crime in the garage and the surrounding area, as well as the garage's physical layout and lighting, Sullivan concluded that the garage required at least three guards

to provide adequate security. In Sullivan's opinion, "[h]ad appropriate security coverage been in place, had access to the facility been controlled, had lighting been adequate, it is probable that criminal activity would have been deterred and the robbery which led to [Javery's] death would not have been attempted."

During deliberations, the jury was furnished with four interrogatories.[3] In response, the jury specifically found the following: the defendant was negligent by failing to provide the requisite level of security in its garage; the defendant's negligence was the proximate cause of, i.e., a substantial factor in causing the harm to Javery; the defendant's failure to use reasonable care in guarding the safety of its patrons within its garage created or increased the likelihood of injury to a customer as a result of a criminal act within the garage; and the harm caused by Williams was within the scope of the risk created by the defendant's negligence. In accordance with the jury verdict, the court rendered judgment for the plaintiff. This appeal followed.

I

At the conclusion of the evidence and summations, the trial court furnished the jury with extensive instructions on all aspects of the law pertaining to the case, including instructions regarding proximate cause and

---

[3] The interrogatories read as follows:

"1. Did you find that [the] defendant acted negligently in that it failed to provide the required level of security in its garage?

"2. If the answer to question number one is that the defendant acted negligently do you find that the negligence was at least one proximate cause of (a substantial factor causing) the harm suffered by Mrs. Javery?

"3. Did Bloomingdale's failure to use reasonable care in providing adequate security to protect business invitees within the garage from criminal conduct create or increase the likelihood of injury to a customer as a result of a criminal act within the garage?

"4. If Bloomingdale's was negligent, was the harm caused by Mr. Williams within or without the scope of the risk created by the defendant's negligence?"

intervening cause. The defendant focuses on the following three aspects of the initial and supplemental instructions as the basis for its claim that the trial court improperly instructed the jury: (1) the court's failure to reinstruct on the issue of cause in fact; (2) the court's failure to instruct that the plaintiff had a heightened burden of proof regarding the "scope of the risk" caused by the defendant's negligence; and (3) the court's response to the jury's inquiry whether the nature of the crime should be considered when determining causation.

Our standard of review is well established. "The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 240, 520 A.2d 1008 (1987). Thus, we must determine "whether the charge as a whole presents the case to the jury so that no injustice will be done." *State* v. *Derrico*, 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). Only when a specific request to charge is filed, or an exception is taken to the charge, may this court examine individual components of the charge. *State* v. *Fleming*, 198 Conn. 255, 268, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). Therefore, jury instructions "need not be exhaustive, perfect, or technically accurate." (Internal quotation marks omitted.) *Preston* v. *Keith*, 217 Conn. 12, 17, 584 A.2d 439 (1991). Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict. Id.

## A

Other than on the issue of the burden of proof,[4] the defendant does not challenge the trial court's initial charge on causation. Rather, the defendant focuses its first claim on the supplemental instructions that were given in response to a note from the jury to the judge that read: "Please redefine causation as it pertains to this case."

In its initial instruction, the trial court charged that the plaintiff was required to establish that the defendant's conduct was the legal cause of Javery's harm and death. Legal cause was defined as having two components, both of which had to be satisfied: cause in fact and proximate cause. The court defined cause in fact as the purest application of legal cause. To determine whether cause in fact existed, the jurors were instructed to ask themselves: Would the injury have occurred were it not for Bloomingdale's negligent conduct? Addressing the second component, the court noted that there can be multiple proximate causes of an event, and that proximate cause is satisfied if the plaintiff can prove that the defendant's negligence was a substantial factor in the resulting harm.

In response to the jury's request for a redefinition of causation, the trial court reminded the jurors that the charge was to be understood as a whole, and that no individual point should be singled out.[5] The court then

---

[4] See part I B of this opinion.

[5] The court stated: "Now, ladies and gentlemen, at the outcome of this case I have indicated to you that the charge is a whole, so we have to keep it in balance because this is the charge again, and that's why I read to you at the very beginning a charge of a whole: I instruct you not to single out any sentence or individual point or instruction in my charge and ignore the others. You can consider all the instructions as a whole with regard to each other. . . ."

proceeded to repeat its definition of proximate cause as a "substantial factor," without explicitly redefining cause in fact.

The defendant argues that because of the absence of an explicit recharge on the issue of cause in fact, the jury was not adequately guided on the elements of causation. We disagree. Before we may address the defendant's claim, we must review the principles of legal causation.

Cause in fact, occasionally referred to as actual cause, asks whether the defendant's conduct "caused" the plaintiff's injury. Thus, if the plaintiff's injury would not have occurred "but for" the defendant's conduct, then the defendant's conduct is a cause in fact of the plaintiff's injury. Conversely, if the plaintiff's injury would have occurred regardless of the defendant's conduct, then the defendant's conduct was not a cause in fact of the plaintiff's injury. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 41, p. 266. Here, the court correctly defined cause in fact as: "Would the injury have occurred were it not for [the defendant's] negligent . . . conduct . . . ?" See *Doe* v. *Manheimer*, 212 Conn. 748, 757, 563 A.2d 699 (1989).

Philosophically, cause in fact is limitless; "but for" the creation of this world, no crime or injury would ever have occurred. W. Prosser & W. Keeton, supra, p. 264. The philosophical sense of causation includes the "great number of events without which any happening would not have occurred . . . yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes." 2 Restatement (Second), Torts § 431, comment (a) (1965).[6] Therefore, as a practical matter, limits must be established. Lines must be drawn determining how far down the causal continuum indi-

---

[6] See footnote 8.

viduals will be held liable for the consequences of their actions. W. Prosser & W. Keeton, supra, § 42, p. 273. This line is termed "proximate cause."

Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff. Id., § 41, p. 263. Proximate cause serves to "[temper] the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty." (Internal quotation marks omitted.) *Doe* v. *Manheimer*, supra, 212 Conn. 757–58. In other words, legal cause can be portrayed pictorially as a Venn diagram, with the circle representing cause in fact completely subsuming the smaller circle representing proximate cause, which specifically focuses on that which we define as legal causation. This court has defined proximate cause as *"[a]n actual cause that is a substantial factor* in the resulting harm . . . ." (Emphasis added.) Id., 757; *Mahoney* v. *Beatman*, 110 Conn. 184, 195, 147 A. 762 (1929). It was this definition of proximate cause that the trial court employed in its initial and supplemental instructions.[7]

When a court responds to a jury's inquiry, the court's supplemental charge may be "less formal and lack the exactness of the formally prepared original charge." *DePaola* v. *Seamour*, 163 Conn. 246, 253, 303 A.2d 737 (1972). Nevertheless, "additional charges to the jury must state the law correctly and not be misleading . . . ." Id. To determine the correctness of a jury charge, the charge must be "read as a whole, and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *Blanchette* v. *Barrett*, 229 Conn. 256, 280, 640 A.2d 74 (1994).

---

[7] As instructed by the court, the definition of proximate cause includes reference to actual cause: "[A] proximate cause is a cause in fact which is also a substantial factor in producing the injury."

Reading the jury recharge in light of these principles, we are persuaded that the trial court adequately instructed the jury as to the necessary elements of causation. The trial court already had informed the jury of its duty to find that the defendant's actions were a "cause in fact" of Javery's injury. The court also had instructed the jury that it could not find that the defendant's actions were a cause in fact of Javery's injury, unless it found that, in the absence of the defendant's conduct, the injury would not have occurred. Although the recharge did not explicitly redefine the cause-in-fact test, the trial court, in explaining what was necessary to find proximate cause, adequately reminded the jury of the cause-in-fact issue. The jury, therefore, received adequate guidance on the issue of causation.[8]

## B

The defendant next claims that the trial court improperly instructed the jury on the burden of proof regarding superseding cause. Specifically, the defendant claims that in accordance with *Manheimer*, the trial court should have instructed the jury that the plaintiff had to prove that the intentional act of Williams was within the scope of the risk caused by the defendant's negligence "to a fairly strong degree of certainty." The court declined to give such an instruction, both in its initial and supplemental charges.

We have adopted the standard set forth in § 442B of the Restatement, that "[w]here the negligent con-

---

[8] In most instances, and when a party does not specifically request an independent instruction on cause in fact, an instruction on proximate cause alone may be sufficient to guide the jury on the meaning of legal causation. The Restatement (Second) of Torts takes this approach. Rather than defining legal cause as a combination of cause in fact and proximate cause, § 431 of the Restatement provides that a person's "negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm . . . ."

duct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." *Doe* v. *Manheimer*, supra, 212 Conn. 759; *Kiniry* v. *Danbury Hospital*, 183 Conn. 448, 454–55, 439 A.2d 408 (1981).

The defendant's claim that the plaintiff has a heightened burden regarding whether Williams' intentional act was within the scope of the risk created by the defendant originates from one phrase used in *Manheimer*. We stated in *Manheimer* that the application of § 442B of the Restatement *"requires a fairly strong degree of certainty* that a criminal or intentional intervening act is within the 'scope of the risk' of a negligent actor's conduct." (Emphasis added.) *Doe* v. *Manheimer*, supra, 212 Conn. 767. Such a heightened burden of proof is not required by the Restatement, which merely requires proof by a preponderance of the evidence, nor did we mean to imply in *Manheimer* that there is a higher secondary standard of proof required for § 442B. We have but one civil common law standard of proof for the recovery of damages in negligence, that is, a fair preponderance of the evidence. *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 372, 441 A.2d 620 (1982); see also 2 Restatement, supra, § 328A, comment (a); W. Prosser & W. Keeton, supra, § 38, p. 239. Consequently, the plaintiff must show, by a fair preponderance of the evidence, that harm intentionally caused by a third person is within the scope of the risk created by the defendant's negligent conduct. Accordingly, we explicitly disavow that language from *Manheimer*, and, accordingly, we reject the defendant's claim that the trial court should have instructed the jury that the plaintiff was required to prove, to a fairly strong degree of

certainty, that the conduct of Williams was within the scope of the risk created by the defendant's negligence.

## C

The third issue concerning causation raised in this appeal requires little discussion because of our clear precedents on this matter. On the fourth day of deliberations, the jury asked: "Do we . . . consider the nature of a crime when determining causation?" The trial court answered "no" to the jury's question and instructed the jury that liability was not contingent upon the actual type, extent or severity of the criminal activity. The court instructed the jury that it was to consider the general nature of the harm, i.e., the criminal activity in the garage and in the surrounding area, in order to determine the scope of the risk when applying the rule of § 442B of the Restatement.[9] The defendant asserts that the question should have been answered "yes," because, according to the defendant, no similar crime had been previously committed within the garage. Thus, according to the defendant, the intentional conduct of Williams was not within the scope of the risk created by its conduct, and consequently the defendant should be relieved of liability. We disagree.

Our decision in *Manheimer* is instructive on this point. "Our cases make it clear that, to be within the 'scope of the risk,' the harm actually suffered must be of the *same 'general type'* as that which makes the defendant's conduct negligent in the first instance." (Emphasis added.) *Doe* v. *Manheimer*, supra, 212 Conn. 764. Moreover, "[i]f the . . . [defendant's] conduct is a substantial factor in bringing about harm to

---

[9] The court answered: "As to the amount of an award of money, the answer would generally be considered yes. As to the issue of liability to pay out—to pay any amount of damages at all, the answer is no as to a particular crime except you must look at all criminal activity in the garage and in the area to understand the scope of the risk as it relates to the analysis of [§ 442B] . . . ."

another, the fact that the . . . [defendant] neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent it from being liable." (Internal quotation marks omitted.) *Merhi* v. *Becker*, 164 Conn. 516, 521, 325 A.2d 270 (1973); 2 Restatement, supra, § 435 (1). Accordingly, we conclude that the trial court's answer to the jury question properly stated the law.

## II

The last issue raised by the defendant is whether the trial court improperly refused to direct a verdict in favor of the defendant. After the close of the plaintiff's case, the defendant moved for a directed verdict, which was denied by the trial court. After the trial court accepted the jury verdict, the defendant then moved for a judgment notwithstanding the verdict. Practice Book § 321. Our standard of review is succinctly set out in *Mather* v. *Griffin Hospital*, 207 Conn. 125, 540 A.2d 666 (1988). "Our review of the trial court's refusal to direct a verdict requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Citations omitted; internal quotation marks omitted.) Id., 130.

The defendant argues that Williams' actions were not within "the scope of the risk" foreseeable to it, because there had been no prior incidents of murder within the garage. Williams' actions, the defendant claims, therefore constituted a superseding intervening cause that, as a matter of law, excused the defendant from liability for Javery's death. The defendant consequently

asserted that Javery's death was not reasonably foreseeable, and therefore was not within the scope of the risk of § 442B of the Restatement.

The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue. *Doe* v. *Manheimer*, supra, 212 Conn. 756; *Tetro* v. *Stratford*, 189 Conn. 601, 605, 485 A.2d 5 (1983); *Fox* v. *Mason*, 189 Conn. 484, 489, 456 A.2d 1196 (1983). "It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Trzcinski* v. *Richey*, 190 Conn. 285, 295, 460 A.2d 1269 (1983); 2 Restatement, supra, § 434. Therefore, only if the intervention of Williams was not foreseeable as a matter of law will this court reverse the jury's determination.

This court does not agree with the defendant's narrow definition of "scope of the risk." As we pointed out in part I C of this opinion, it is the general nature of the crime, not the particular crime, that defines the breadth of the scope of the risk.[10] In light of the evi-

---

[10] "[T]ortious or criminal acts may in themselves be foreseeable, and so within the scope of the created risk, in which case the actor may still be liable for the harm, under the rules stated in §§ 448 and 449." 2 Restatement, supra, § 442B, comment (c). Section 448 of the Restatement provides: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized . . . that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." Moreover, as noted in comment (c) of § 448, "[t]he actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability (see § 449). However,

dence received at trial, we conclude that a jury reasonably could have found, by a fair preponderance of the evidence, that the harm that befell Javery had been reasonably foreseeable and within the scope of the risk created by the defendant's negligence.

The defendant relies on our decision in *Manheimer*, wherein we upheld the trial court's conclusion that, as a matter of law, the intentional act of a third party had not been within the scope of the risk created by the defendant's negligence. In *Manheimer*, this court determined that it was not reasonably foreseeable to a private landowner that overgrown vegetation might provide a substantial incentive or inducement for the commission of a violent criminal assault on his property by one stranger upon another. *Doe v. Manheimer*, supra, 212 Conn. 762. We held that a prudent landowner would not infer from his ordinary experience that overgrown vegetation could prompt such a violent criminal act. Id. Furthermore, "there was no evidence tending to demonstrate that the defendant had had any past experience that might reasonably have led him to perceive and act on the atypical association between 'natural shields' such as overgrown vegetation and violent criminal activity." Id. The evidence showed only that nonviolent "criminal activity" such as vagrancy and the public consumption of alcohol tended to occur in the vacant lot belonging to the defendant. Id. Consequently, we ruled that, as a matter of law, the intentional conduct of the third person was not within the scope of the risk created by the defendant's negligence. Id., 762–63.

---

it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to commit the crime. It is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission."

The facts in this case, however, are strikingly different than those presented in *Manheimer*. As applied to this case, the jury reasonably could have found that the particular harm involved, Javery's robbery and murder, had been within the foreseeable scope of the risk because the prior robberies that occurred in the garage were crimes with a natural propensity to escalate into physical violence, including murder. Furthermore, given the criminal statistics that were available to the defendant, the recommendations of its own security supervisor and other employees, and the past violent crimes that had occurred within the garage and its immediate vicinity, the jury reasonably could have found that the defendant had been aware or should have been aware of the dangers of larceny, robbery, rape, felony murder and other similar crimes that are prevalent in shadowy, isolated places, such as the dim parking garage in question.

In light of this evidence, a jury reasonably could have concluded that the defendant had both actual and constructive notice that robbery and its associated violent consequences were likely to occur in its garage. Moreover, a jury reasonably could have concluded that the constant presence of individuals, encumbered with their purchases, returning to their vehicles in a parking structure that was not enclosed and that was either unguarded or insufficiently guarded, served as an invitation to criminals, an invitation that had been accepted on several previous occasions. Consequently, in this instance, jurors reasonably could have concluded that the intervention of Williams had been within the foreseeable scope of the risk created by the defendant's negligent conduct and thus was not a superseding cause. Accordingly, we conclude that there was sufficient evidence of causation to support the jury's verdict.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.