[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The defendants move to strike counts one, three and four of the amended complaint, which seek relief pursuant to General Statutes §§ 31-51m et seq., on the grounds that the National Insurance Crime Reporting Bureau is not a public agency.
General Statutes § 31-51m(b) provides in pertinent part: "No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action." Thus, an essential element of a claim under General Statutes § 31-51m is that the plaintiff reported a violation to a public body. Girgenti v. Cali-Con, Inc.,15 Conn. App. 130, 140, 544 A.2d 655 (1988). CT Page 10213
"Public body" is defined in General Statutes § 31-51m(a)(4) as: "(A) any public agency, as defined in subsection(a) of section 1-18a, or any employee, member or officer thereof, or (B) any federal agency or any employee, member or officer thereof." (Emphasis added.)
General Statutes § 1-18a(a) provides: "'Public agency' or `agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions."
The Connecticut General Statutes and the regulations of the Commissioner of Insurance make reference to the National Insurance Crime Bureau. See, e.g., General Statutes § 38a-357; Res., Conn. State Agencies §§ 38a-357-1 through 38a-357-8.[1]
In Connecticut Humane Society v. Freedom of InformationCommission, 218 Conn. 757, 759-61, 591 A.2d 395 (1991), the Supreme Court stated: "In cases such as this, where it is unclear whether a hybrid public/private entity falls within the definition set forth in 1-18a(a), we have interpreted the section to include within its scope an entity that is the functional equivalent of a public agency. Board of Trustees v. Freedom ofInformation Commission, 181 Conn. 544, 554-55, 436 A.2d 266
(1980). In determining whether an entity is the functional equivalent of a public agency, we consider the following criteria: `(1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government.' Id., 554; see also Hallas v.Freedom of Information Commission, 18 Conn. App. 291, 294,557 A.2d 568 (1989).
"In Hallas v. Freedom of Information Commission, supra, 295, the Appellate Court concluded that `[u]nless all four factors [of the functional equivalency test] are present, the agency does not CT Page 10214 meet the test and cannot be considered a public agency.'
"In light of the myriad of organizational arrangements that may be confronted, under the functional equivalency approach, `"each new arrangement must be examined anew and in its own context." Washington Research Project, Inc. v. Department ofHealth, Education Welfare, [504 F.2d 238, 245-46 (D.C. Cir. 1974), cert. denied, 421 U.S. 963, 95 S.Ct. 1951,44 L.Ed.2d 450 (1975)]. . . . `All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive.' Railway Labor Executives' Assn. v. Consolidated RailCorporation, 580 F. Sup. 777, 778 (D.D.C. 1984). . . ."Connecticut Humane Society v. Freedom of Information Commission,
supra, 218 Conn. 759 61; see also Domestic Violence Service ofGreater New Haven v. Freedom of Information Commission,240 Conn. 1, 3 n. 2, 688 A.2d 314 (1997); Yantic Volunteer Fire Co. v.Freedom of Information Commission, 44 Conn. Sup. 230, 232-33,682 A.2d 156 (1995), aff'd, 42 Conn. App. 519, 679 A.2d 989 (1996).
In light of General Statutes § 38a-357, Section 38a-357-1
of the Regulations of Connecticut State Agencies and the functional equivalency test of Connecticut Humane Society v.Freedom of Information, supra, it cannot be said on this state of the pleadings, on a motion to strike, that the National Insurance Crime Reporting Bureau is not a public body or public agency.
 II
The defendants move to strike counts one, three and four of the amended complaint, which seek relief pursuant to General Statutes § 31-51q, because, they claim, the plaintiff has failed to allege that she was exercising a right protected by theFirst Amendment to the Constitution of the United States or section 4 or 14 of the Constitution of the State of Connecticut when she was discharged.
General Statutes § 31-51q provides in pertinent part: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to theUnited States Constitution or section 3, 4 or 14 of article firstof the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the CT Page 10215 employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge. . . ." (Emphasis added.) The gravamen of this ground of the defendants' motion to strike is that the plaintiff has not alleged a violation of constitutional rights because all of the plaintiff's statements were made on private property. This is not true of the third count which alleges without any specification of the place of reporting: "the plaintiff was terminated from her employment at Francis A. Sartiano's chiropractic [o]ffice for whistle blowing activity in reporting the fraud and illegal insurance practices of Francis A. Sartiano."
The first and fourth counts, however, allege:
 On May 5, 1994, the plaintiff was meeting with an insurance investigator for the National Insurance Crime Bureau and the defendant Francis A. Sartiano, P.C.'s, office manager, Angelina Avitable, walked in on the meeting and fired the plaintiff.
 On May 5, 1994, Angelina Avitable, knew that the plaintiff's meeting was with an insurance investigator who was conducting an investigation of the illegal practices of Francis Sartiano, P.C., since the plaintiff had previously informed her of the investigation and the investigator's identity and had asked her to cooperate in the investigation.
"The interpretation of pleadings is always a question for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citations and internal quotation marks omitted.)Parsons v. United Technologies Corp., 243 Conn. 66, 82-83,700 A.2d 655 (1997).
Applying this rule of construction, the court still cannot divine a suggestion in the first and fourth counts that the plaintiff exercised any constitutional right on public property. The United States Supreme Court has refused "to extend federal constitutional protection to expressive activity on private CT Page 10216 property. "Cologne v. Westfarms Associates, 192 Conn. 48, 57,469 A.2d 1210 (1984); see Pruneyard Shopping Center v. Robins,447 U.S. 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). Similarly, the Connecticut Supreme Court has held that the state constitution's free speech provisions only protect against infringement by state action. Cologne v. Westfarms Associates, supra, 192 Conn. 62; see also Monahan v. Bausch, Superior Court, judicial district of Fairfield; Docket No. CV91 0280862 (Sept. 11, 1991) (Spear, J.). For this reason, the motion to strike the first and fourth counts is granted.
 III
The defendants next move to strike the fifth count of the plaintiff's complaint. The defendants characterize this count as sounding in intentional infliction of emotional distress. The plaintiff claims that it alleges only negligent infliction of emotional distress. Adopting the plaintiff's characterization, the count still must be stricken.
The material allegations of the fifth count are that during her employment, the plaintiff many times asked the defendant Sartiano to discontinue his illegal practices, a request he refused. While the plaintiff was meeting with an insurance investigator about these practices, Sartiano had her fired.
"[N]egligent infliction of emotional distress in the employment context arises only where it is `based upon unreasonable conduct of the defendant in the termination process. . . .`the mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. `The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.' Madani v. Kendall Ford, Inc., 312 of. 198, 204, 818 P.2d 930 (1991)." Parsons v. United Technologies Corp., supra, 243 Conn. 88-89. "Such a claim must be accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge. Chieffalo v. Norden Systems,Inc., Superior Court, judicial district of Stamford-Norwalk, No. 127694 (12 Conn. L. Rptr. 656, 657) (1994); Skierkowski v.Creative Graphics Services, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, No. 463242 (1995). An example of unreasonable conduct occurring at the time of discharge is where a `meeting or any other aspect of the CT Page 10217 actual discharge was done in [a] . . . humiliating manner. . . .'Leniart v. C S Distributors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516354 (1994)." Parsons v. Sikorsky Aircraft Division, Superior Court, judicial district of Fairfield, No. 280394 (March 1, 1996), aff'd in part, rev'd on other grounds, 243 Conn. 66, 700 A.2d 655
(1997). Since the plaintiff does not allege unreasonable conduct in the termination process, the motion to strike the fifth count is granted.
 IV
Finally, the defendants move to strike counts three, four, five and six, which are directed against the defendant Frank A personally, because there is no allegation of any tortious act committed by that defendant in those counts.
 A.
In count three the plaintiff alleges that the defendant is the alter ego of Francis A., P.C., and that he failed to comply with necessary corporate procedures. That count, however, does not allege that Sartiano, individually, is liable for the wrongful discharge of the plaintiff alleged in counts one and two. Rather, the third count alleges that used his control of the corporation to commit fraud and illegal insurance practices which "led to and proximately caused the [plaintiff's] injuries and damages hereinafter more specifically set forth."
"With regard to the requisite causal element, it is axiomatic that proximate cause is `[a]n actual cause that is a substantial factor in the resulting harm . . . . `Stewart v. Federated Dept.Stores, Inc., 234 Conn. 597, 606, 662 A.2d 753 (1995). The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act . . . .Doe v. Manheimer, 212 Conn. 748, 758, 563 A.2d 699 (1989) [overruled in part on other grounds, Stewart v. Federated Dept. Stores,Inc., 234 Conn. 597, 608, 662 A.2d 753 (1995)]. Proximate cause does no exist merely because there is cause in fact. 'Philosophically, cause in fact is limitless; but for the creation of this world, no crime or injury would ever have occurred. . . . Lines must be drawn determining how far down the causal continuum individuals will be held liable for the consequences of their actions. . . .`Stewart v. Federated Dept. Stores, Inc., supra, CT Page 10218 605-606, citing W. Prosser W. Keeton, Torts (5th Ed. 1984) § 41, p. 264, and § 42, p. 273. 'This line is labeled "proximate cause."' Suarez v. Sordo, 43 Conn. App. 756, 769,685 A.2d 1144 (1996) [cert. denied, 240 Conn. 906, 68 A.2d 334
(1997)]. . . .
"Although the issue of causation generally is a question reserved for the trier of fact . . . the issue becomes one of law when the mind of a fair and reasonable person could reach only one conclusion, and summary judgment may be granted based on a failure to establish causation." Abrahams v. Young Rubicam,Inc., 240 Conn. 300, 306-307, 692 A.2d 709 (1997).
In Abrahams v. Young Rubicam, Inc., supra, 240 Conn. 300, the plaintiff brought an action under the Connecticut Unfair Trade Practices Act (CUTPA) in United States District Court alleging that the defendants had damaged his reputation and business interests by their participation in a scheme in which they paid substantial monies to a third party in the mistaken belief that the monies would be used to bribe the plaintiff, then reported to government authorities that the plaintiff had accepted the bribe. Id., 302. The District Court dismissed the CUTPA claim. Id. On appeal, the Second Circuit certified to the Supreme Court of the State of Connecticut the question whether the plaintiff's allegations, if proven, would give rise to a CUTPA claim. Id., 303. The Supreme Court held that no such claim could be proven. Id., 304. Said the court:
 In this case, Young Rubicam's bribery scheme did not, in and of itself, directly harm the plaintiff. The plaintiff has not alleged, nor can it be reasonably inferred from the plaintiff's allegations, that Young 
Rubicam either intended or could have foreseen that, as a result of its attempt to bribe the plaintiff, he would be injured by an erroneous indictment for bribery or by publication of the incorrect accusations therein. In other words, Young Rubicam's conduct in attempting to bribe the plaintiff was not `a substantial factor reasonably foreseeable as likely to bring about [the] plaintiff's indictment [on false charges] and his resulting damages. [the p]laintiff was neither the intended target nor victim of [Young Rubicam's] illegal activities. . . .`It is true that the plaintiff would not have been harmed but for the existence of the bribery scheme. As explained previously, however, mere `but for' CT Page 10219 causation is not sufficient to support a CUTPA claim. Rather, the proximate cause of the plaintiff's injuries was the confession that Young Rubicam gave to state and federal authorities after its scheme was discovered, in which it implicated the plaintiff as having accepted bribes. It was the confession, not the underlying bribery scheme, that directly and predictably led to the indictment against the plaintiff that damaged his reputation. As the Court of Appeals observed, the plaintiff was injured not by the bribery scheme itself, but `by the fallout from the scheme's exposure.'
(Citations omitted.) Id., 307-308.
Similarly, here, the proximate cause of the plaintiff's losses was not Sartiano's fraud and illegal insurance practices. The proximate cause of her losses was her discharge from her employment. While proximate cause, as stated supra, is usually a question of fact, there are cases where common sense and experience render it a question of law which, as in Abrahams v.Young Rubicam, Inc., supra, may be determined from the face of the complaint. See also Coste v. Riverside Motors, Inc.,24 Conn. App. 109, 113-115, 585 A.2d 1263 (1991) (granting of motion to strike affirmed based on lack of proximate cause). This is such a case. The motion to strike the third count is granted.
 B.
In count four the plaintiff alleges that she was employed by individually and that she was wrongfully discharged, in violation of General Statutes §§ 31-51q and 31-51m, when she was discharged by acting through his employee. The defendants move to strike this count on the grounds that it asserts liability against personally. "The flaw in the defendants position is that it presupposes that the plaintiffs are not entitled to put forth alternative theories of liability. Our law, however, has never placed such a limitation on litigants. Cf. Dreier v. Upjohn Co.,196 Conn. 242, 492 A.2d 164 (1985) (under our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint); DeVita v. Esposito, 13 Conn. App. 101,535 A.2d 364 (1987), cert. denied, 207 Conn. 807, 540 A.2d 375
(1988) (same). "Sharp v. Wyatt, Inc., 31 Conn. App. 824, 844,627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 644 A.2d 871 (1994); see also Marrin v. Spearow, 35 Conn. App. 398, 401, 646 A.2d 254
CT Page 10220 (1994). Because the plaintiff, in the fourth count, alleges that she was employed by, individually, and was fired by him, she alleges a cognizable cause of action against him individually. So too, the sixth count, which alleges that the plaintiff was employed by personally and that he breached an implied covenant of good faith and fair dealing, is not vulnerable on this basis. In summary, the defendants' motion to strike counts one, three, four and five of the amended complaint is granted. The balance of the motion to strike is denied.
BY THE COURT
Bruce L. LevinJudge of the Superior Court