Linda DRISCOLL

v.

**GENERAL NUTRITION CORP. d/b/a General Nutrition Center, Hazard Avenue Associates, Frank Troiano, Anthony Troiano, Jr., James Viola, Hazard Avenue Limited Partnership.**

No. 3:97CV871 (AHN).

United States District Court,
D. Connecticut.

Jan. 25, 1999.

Robert J. Williams, Jr., Richard A. Vassallo, Williams & Vassallo, Suffield, CT, for Linda Driscoll.

Philip J. O'Connor, Gordon, Muir & Foley, Hartford, CT, Kevin M. Brill, Providence, RI, for General Nutrition Corp.

Frederick L. Monahan, Jr., Law Offices Of Larry Lewis, Meriden, CT, Joseph A. Labella, Cartafalsa & Shields, Wallingford, CT, for Hazard Ave Assoc., Frank Troiano, Anthony Troiano, Jr., James Viola, Hazard Ave Ltd Partnership.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiff, Linda Driscoll ("Driscoll"), filed this action in state court against the defendants, General Nutrition Corporation d/b/a General Nutrition Center ("GNC"), and Frank Troiano, Anthony Troiano Jr., James Viola, Hazard Avenue Associates, and Hazard Avenue Limited Partnership (collectively "Hazard") alleging negligence and negligent infliction of emotional distress. The defendants subsequently removed this action to this court pursuant to 28 U.S.C. §§ 1441, 1446 on the basis of diversity jurisdiction.

Now pending before the court are GNC's Motion for Summary Judgment, Hazard's Motion for Summary Judgment and GNC's second Motion for Summary Judgement. For the reasons set forth below, GNC's first motion [doc. # 18] is DENIED without prejudice and the remaining motions [docs. # 23 & 33] are DENIED.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). After discovery, if the nonmovant "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 258, 106 S.Ct. 2505. A

court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation and internal quotation marks omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (citation and internal quotation marks omitted).

In assessing the record to determine whether a genuine dispute as to a material fact exists, the court is required to resolve all ambiguities and draw all inferences in favor of the nonmovant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).

## FACTS

GNC owned and operated a store at the Stop & Shop Plaza (the "Plaza") in Enfield, Connecticut from 1992 through 1997. (*See* GNC's Rule 9(c) Statement of Facts ¶¶ 3, 6 [hereinafter "GNC's Stat."].) On January 19, 1996, Driscoll commenced working as a sales clerk for GNC at this location. (*See* GNC's Stat. ¶ 2; Dep. of Linda Driscoll at 30 [hereinafter "Driscoll Dep."].) Gloria Westover ("Westover"), Driscoll's supervisor, was also working at GNC that day. (*See* Driscoll Dep. at 32–33.)

On January 19, 1996 at approximately 10:15 a.m., Gregory Popielarczyk ("Popielarczyk") entered the GNC store dressed in a "slovenly" manner, looked around for five minutes, and exited the store. (*See* Driscoll Dep. at 34, 38, 40.) Popielarczyk returned approximately ten minutes later carrying a bag, circled the store interior several times, and asked for an unidentified bodybuilding product (the "product"). (*See id.* at 45, 47, 55.) Popielarczyk left the store after ten minutes because he purportedly could not locate the product. (*Id.* at 47.) After Popielarczyk's second visit, Driscoll told Westover,

"This guy scares me," and wanted to call the police. (*Id.* at 49, 63.) Westover, however, discouraged Driscoll from taking this action. (*Id.* at 60, 62.)

Approximately ten minutes later, Popielarczyk returned to the store a third time. (*See id.* at 51.) He again carried a bag which he claimed contained an empty bottle of the product he needed. (*Id.* at 55–58.) Because the zipper on the bag was allegedly stuck, he again left the store. (*Id.* at 57–58.) Shortly thereafter, Popielarczyk returned for a fourth time, grabbed Driscoll by the neck and forced her and Westover into separate rooms in the back of the store while he ransacked the cash register. (*Id.* at 71–72, 74, 76–77, 79–80.) Popielarczyk subsequently sexually assaulted Driscoll by forcing her to perform oral sex on him. (*Id.* at 80.)

One week prior to this incident, on January 12, 1996, a robbery and threat to sexually assault a female employee occurred at a store across the street from the Plaza. (*See* Pl.'s Rule 9(c)2 Statement of Facts dated 7/27/98 ¶ 15 [hereinafter "Pl.'s Stat."].)

Driscoll commenced this action on March 31, 1997, in Connecticut Superior Court. It was subsequently removed to this court on May 6, 1997. Driscoll has also applied for workers' compensation benefits as a result of this incident. (*See* GNC's Stat. ¶ 12.)

## DISCUSSION

I. *GNC's First Motion for Summary Judgment*

The purpose of Connecticut's Workers' Compensation Act, Conn. Gen.Stat. §§ 31–275 through 31–355a ("WCA" or "the Act"), "is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." *Mingachos v. CBS, Inc.*, 196 Conn. 91, 97, 491 A.2d 368 (1985) (citation omitted). Where a personal injury is covered by the WCA an employee must rely on this statutory remedy and may not pursue common law tort claims against his employer. *See Jett v.. Dunlap*, 179 Conn. 215, 217, 425 A.2d 1263 (1979); *Meyers v. Arcudi*, 915 F.Supp. 522, 524 (D.Conn.1996). Thus, the WCA "com-

promise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos,* 196 Conn. at 97, 491 A.2d 368 (citations omitted).

GNC argues that it is entitled to summary judgment because the WCA's "exclusivity provision" bars Driscoll's claims for negligence. This provision provides that an employer "shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment" so long as the employer secures compensation for its employees under the WCA. Conn. Gen.Stat. Ann. § 31–284(a) (West 1997). Under the Act a "personal injury" encompasses an "accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease." *Id.* at § 31–275(16)(A). The Act specifically excludes from this definition any "mental or emotional impairment, *unless such impairment arises from a physical injury* or occupational disease." *Id.* at § 31–275(16)(B)(ii) (emphasis added).

Driscoll argues that her claim is not barred by the WCA because she seeks relief for emotional, not personal injuries. However, GNC points out that Driscoll's emotional injuries flow from a sexual assault, *see* Compl. ¶ 10, which GNC claims is a "physical injury" under Conn. Gen.Stat. § 31–275(16)(B)(ii).[1] If GNC is correct, the WCA would act as a bar to Driscoll's negligence claims.

Although the WCA contains an explicit definition for the term "personal injury" it does not define the term "physical injury." Despite this fact, the parties ask this court to determine whether a sexual assault is a "physical injury" within the meaning of the WCA. This question is further complicated by the fact that Driscoll's sexual assault involved fellatio, not intercourse. Neither the Connecticut Supreme Court nor any other Connecticut courts have addressed this issue.

The Uniform Certification of Questions of Law Act, Conn. Gen.Stat. § 51–199a, provides that a district court may certify "questions of law ... which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state." Conn. Gen.Stat. Ann. § 51–199a(b) (West Supp.1998). This "procedure is best used for obtaining an authoritative state law ruling that affects the merits of a federal law suit, and should be used sparingly ... merely to resolve a threshold issue that concerns only whether the suit must proceed in federal court." *Bethphage Lutheran Serv., Inc. v. Weicker,* 965 F.2d 1239, 1246 (2d Cir.1992).

 In the absence of controlling precedent in the decisions of the Connecticut Supreme Court, as well as the fact that this issue directly affects whether this action may proceed in federal court, *see Bethphage,* 965 F.2d at 1246, it is in the interests of justice that the question of whether a sexual assault is a physical injury under the WCA be resolved by certification to the Connecticut Supreme Court. Accordingly, GNC's first Motion for Summary Judgment [doc. # 18] is DENIED without prejudice to renewal after the Connecticut Supreme Court decides this issue.

II. *Hazard's Motion for Summary Judgment and GNC's second Motion for Summary Judgment*

Hazard argues that it is entitled to summary judgment because it was not the legal cause of Driscoll's injuries.[2] Specifically,

---

1. Driscoll's complaint provides:

 As a result of the above mentioned sexual assault the plaintiff, Linda Driscoll, suffered various physical and psychological injuries to her person including but not limited to fear, stress, headaches, phobias, nervousness, tension, irritability, fatigue, and depression. As a result of said injuries ... [she] has suffered and continues to suffer from physical and emotional pain.
 (Compl.¶ 10.)

2. GNC's second motion for summary judgment relies on and adopts the arguments made by Hazard in support of their motion for summary

Hazard asserts that the intentional criminal act of Popielarczyk breaks the chain of causation in this case. In opposition, Driscoll maintains that Popielarczyk's actions were within the scope of the risk created by Hazard's negligent conduct.

■ "Legal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation." *Kowal v. Hofher*, 181 Conn. 355, 359, 436 A.2d 1 (1980). To determine causation the court must examine two components. *See Stewart v. Federated Dep't Stores, Inc.*, 234 Conn. 597, 605–06, 662 A.2d 753 (1995). First, it must assess whether there is causation in fact. *See id.* at 605, 662 A.2d 753. Cause in fact is established if the plaintiff's injury would not have occurred but for the defendant's conduct. *See Kowal*, 181 Conn. at 359, 436 A.2d 1. "Conversely, if the plaintiff's injury would have occurred regardless of the defendant's conduct, then the defendant's conduct was not a cause in fact of the plaintiff's injury." *Stewart*, 234 Conn. at 605, 662 A.2d 753 (citation omitted).

■ Hazard argues that cause in fact has not been established in this instance because Driscoll purportedly conceded "that unless there had been a security guard standing in front of the GNC store observing the events as they unfolded, the level of security at the mall would not have made any difference in the events." (Hazard's Mem. of Law in Supp. of Mot. for Summ. J. at 5 [hereinafter "Hazard's Mem."].) This assertion misrepresents the content of Driscoll's deposition testimony. In fact, Driscoll testified that had there been security personnel at the Plaza she would have summoned them and alerted them of her concerns after Popielarczyk's second visit to the store. (*See* Driscoll Dep. at 61, 69, 119.) Summoning security would have certainly impeded Popielarczyk's criminal behavior. Thus, but for Hazard's failure to employ adequate security, Driscoll would not have been injured in this instance. In

drawing this conclusion the court notes that cause in fact is an expansive concept. *See Stewart*, 234 Conn. at 605, 662 A.2d 753 (stating that "[p]hilosophically, cause in fact is limitless; 'but for' the creation of the world, no crime or injury would ever have occurred") (citations omitted).[3]

■ The second component of causation is proximate cause. *See Boehm v. Kish*, 201 Conn. 385, 391–92, 517 A.2d 624 (1986). "Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff." *Stewart*, 234 Conn. at 606, 662 A.2d 753 (citation omitted). Generally, proximate cause is defined as an actual cause which is a substantial factor in bringing about harm to the plaintiff. *See id.* "The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." *Chylinski v. Wal–Mart Stores, Inc.*, 150 F.3d 214, 217 (2d Cir.1998) (citation and internal quotation marks omitted).

[8] A foreseeable risk may include the actions of a third party. *See Tetro v. Stratford*, 189 Conn. 601, 605, 458 A.2d 5 (1983). Thus,

> a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person *and* is not within the scope of the risk created by the defendant's conduct.

*Id.* (emphasis added) (citations omitted).

■ Proximate cause is typically a factual question that should be left to the jury's discretion. *See Stewart*, 234 Conn. at 611, 662 A.2d 753; *Doe v. Manheimer*, 212 Conn. 748, 756, 563 A.2d 699 (1989); *Cardona v. Valentin*, 160 Conn. 18, 24, 273 A.2d 697

---

judgment. Thus, as a matter of convenience, the court shall only refer to Hazard during the course of its discussion of these two motions.

**3.** In support of its position that Driscoll has not established cause in fact, Hazard relies on *Vasto-*

*la v. Connecticut Protective System, Inc.*, 133 Conn. 18, 47 A.2d 844 (1946). That case, however, discusses proximate cause not cause in fact. Thus, Hazard's reliance on *Vastola* is unavailing.

(1970). It only becomes a question of law "when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." *Stewart*, 234 Conn. at 611, 662 A.2d 753 (citations omitted).

Hazard argues that the Plaza's lack of security was not a substantial factor in producing Driscoll's assault because "a particular level of security ... is at best incidental to those factors" which motivate criminal behavior. (Hazard's Mem. at 9.) In opposition, Driscoll maintains that this is a jury question. The court agrees with Driscoll and finds that because reasonable minds could disagree on the issue of proximate cause in this instance it is a question best resolved by a jury.

The Connecticut Supreme Court's decision in *Stewart* provides guidance on this issue. There, the plaintiff was robbed and murdered by a third-party in a Blommingdale's parking garage owned and operated by the defendant. *See Stewart*, 234 Conn. at 599–600, 662 A.2d 753. As a result, the plaintiff's estate instituted an action for wrongful death against the defendant landowner. *See id.* at 599, 662 A.2d 753.

The evidence at trial revealed that there was no security personnel on duty at the time of the plaintiff's death and that the defendant typically employed minimal security in the garage and frequently left it unsecured. *See id.* at 600, 662 A.2d 753. The garage was dimly lit, and vehicle and pedestrian access was poorly controlled. *See id.* By reputation, the garage was located in a high crime area with activity ranging from larceny to rape and murder. *See id.* at 601, 662 A.2d 753. "Within the ten months prior to [the plaintiff's] death, over 1000 serious crimes were committed within an area of two blocks from the garage." *Id.* The garage itself was the site of larcenies, car thefts, vandalism, and several robberies. *See id.* Moreover, the defendant's own personnel requested additional security in the garage. *See id.*

The plaintiff's estate presented an expert witness at trial who testified that the defen-dant had inadequately assessed the danger faced by its customers in the garage area. *See id.* In reaching this conclusion, the expert relied on a review of "the history of crime in the garage and the surrounding area, as well as the garage's physical layout and lighting." *Id.* The expert concluded that "[h]ad appropriate security coverage been in place, had access to the facility been controlled, had lighting been adequate, it is probable that criminal activity would have been deterred and the robbery which led to [the plaintiff's] death would not have been attempted." *Id.* at 602, 662 A.2d 753.

The jury found in favor of the plaintiff and the trial court refused to grant the defendant's motion for a directed verdict. *See id.* at 610, 662 A.2d 753. On appeal, the Connecticut Supreme Court affirmed the decision of the trial court. *See id.* at 610–13, 662 A.2d 753. The court found that the plaintiff's murder was within the foreseeable scope of the risk created by the defendant's negligence because "the prior robberies that occurred in the garage were crimes with a natural propensity to escalate into physical violence." *Id.* at 613, 662 A.2d 753. Based on the criminal statistics, the recommendations of defendant's security personnel, and the history of crimes within the garage and surrounding area, the court concluded that the jury could have reasonably found that the defendant knew or should have been aware that "larceny, robbery, rape, felony murder and other similar crimes ... are prevalent in shadowy, isolated places, such as the dim parking garage in question." *Id.*

Here, Driscoll's expert witness, Neil Sullivan ("Sullivan"), reviewed the Enfield Police Department Activity Reports for the years 1993, 1994, and 1995. (*See* Report of Neil A. Sullivan of 3/2/98 [hereinafter "Sullivan Report"].) After grouping the Plaza with a cluster of malls in the Enfield area, Sullivan calculated that approximately 1,831 actual or attempted incidents of aggravated assaults, rapes, burglaries, larcenies, and auto thefts, as well as disorderly conducts and narcotics violations occurred in the Enfield area from 1993 through 1995. (*See id.*) The Plaza itself experienced approximately 178 such in-

cidents.[4] (*See id.*) Sullivan also noted that one week prior to Driscoll's assault, a robbery and threat to sexually assault a female employee occurred at a store across the street from the Plaza. (*See id.*) Sullivan contends that aggravated assaults, rapes, burglaries, larcenies, and auto thefts are a "barometer for serious crime," while disorderly conducts and narcotics violations are "predictors of criminal activity." (*Id.*) Based on these factors, Sullivan opines that "the defendants were negligent in assessing the security needs of the [Plaza] and in providing adequate security for customers and employees on the premises." (*Id.*)

While the facts of this case are not as compelling as those in *Stewart,* the court finds that Sullivan's testimony raises issues on which reasonable minds could disagree. *See Stewart,* 234 Conn. at 611, 662 A.2d 753 (recognizing that proximate cause is not a question of law unless "the mind of a fair and reasonable [person] could reach only one conclusion") (citation omitted). If the jury credits Sullivan's testimony, they could reasonably find that Driscoll's assault was within the foreseeable scope of the risk because the prior crimes which occurred in the area are "barometers" or "predictors" of serious criminal activity. Moreover, based on the criminal statistics which were available to the defendants, the past crimes at the Plaza, as well as the threatened sexual assault at a neighboring strip mall, a jury could reasonably find that the defendants were or reasonably should have been aware that crimes such as robbery and sexual assaults are prevalent in area shopping malls. Accordingly, the defendants motions [docs. # 23 & 33] are DENIED.

### CONCLUSION

Based on the foregoing analysis, GNC's Motion for Summary Judgment [doc. # 18] is DENIED without prejudice. Hazard's Motion for Summary Judgment [doc. # 23] and GNC's second Motion for Summary Judgment [doc. # 33] are DENIED.

4. Hazard points out that not one of these incidents was either a sexual assault or an aggravat-

This case is hereby STAYED pending certification to the Connecticut Supreme Court pursuant to Conn. Gen.Stat. § 51–199(a). Counsel for the plaintiff and defendant GNC are directed to jointly prepare, or separately if they are unable to agree, a proposed certification order consistent with Conn. Gen.Stat. § 51–199(a), setting forth the question of law to be certified, and a statement fully setting forth the nature of this controversy and all relevant facts. The parties are directed to file their proposed certification order within thirty (30) days of the date of this order.