KRISTIN LUDINGTON *v.* CHRISTOPHER
SAYERS ET AL.
(AC 19898)
(AC 19899)

Mihalakos, Dranginis and Shea, Js.

Argued February 23—officially released August 7, 2001

*Glory M. Lena,* for the appellant-appellee (defendant Arute Brothers, Inc.).

*Stewart M. Casper,* with whom, on the brief, were *Gwendolyn Field Noto* and *Victoria de Toledo,* for the appellant-appellee (plaintiff).

*J. Kevin Golger,* for the appellee (named defendant).

*Geoffrey L. Squitiero,* for the appellee (defendant Eric Lent).

*Opinion*

MIHALAKOS, J. Arute Brothers, Inc. (Arute), one of three defendants in this negligence action, appeals from the judgment of the trial court rendered in favor of the plaintiff, Kristin Ludington. On appeal, Arute claims that the court (1) improperly refused to instruct the jury on the doctrine of superseding cause and (2) improperly admitted expert testimony by Steven C. Batterman indicating that Arute had failed to deploy warning signs, including a high mounted, internally illuminated flashing arrow, at the highway construction site where the plaintiff was injured. In a separate appeal, the plaintiff claims that the court improperly refused to tax costs relating to the fee charged by her treating physician for the use of a videotape of his deposition testimony at the trial. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are necessary for our resolution of these appeals. On August 2, 1992, at approximately 10:20 p.m., Christo-

pher Sayers and Eric Lent, the other defendants in this action, departed from Norwalk to return to Stamford. Sayers and Lent traveled in separate vehicles and were driving south on Interstate 95. As they approached exit eleven in Darien, Lent stopped his vehicle because the left lane, in which he was driving, was obstructed by a sign and a highway construction site. Sayers, who was following Lent, was unable to stop his vehicle in a timely manner, and it collided with Lent's vehicle. Both vehicles sustained minor damage; neither vehicle was disabled, however.

After the collision, Sayers and Lent exited the vehicles and walked to a nearby service station in search of a telephone. Thereafter, Sayers and Lent returned; each sat in his vehicle and waited for the police to arrive. At approximately 10:55 p.m., the plaintiff was driving south on Interstate 95. As she approached exit eleven, her vehicle collided with Sayers' vehicle, which, along with Lent's vehicle, was obstructing the left lane. The plaintiff's right foot was severely injured in the collision. Arute was operating the highway construction site near the location of the two collisions.

A state police trooper arrived at the scene and conducted an investigation. He questioned the three drivers and later authored the police accident reports. In the accident reports, the state trooper did not indicate whether there had been a high mounted, internally illuminated flashing arrow present to warn oncoming traffic of the closure of the left lane. The state trooper's diagram of the accident scene depicted one construction sign.

The contract for road repairs between Arute, a construction contractor, and the department of transportation had directed Arute to post a flashing arrow near the highway median, 1000 feet in advance of the closure of the left lane. Additionally, the contract had directed Arute to post a total of five right arrow signs beyond

the flashing arrow in intervals of 200 feet to taper the closure of the left lane.

On November 27, 1992, the plaintiff brought an action in the trial court, seeking compensation for the injury she had sustained in the collision. In the operative complaint, the plaintiff alleged that Arute, Sayers and Lent had been negligent, and that their negligence had caused her vehicle to collide with Sayers' vehicle. Regarding Arute, the plaintiff alleged that it (1) had "failed to place adequate signs warning drivers of the closing of the leftmost southbound lane," (2) had "failed to provide adequate advanced warning of the closing of the leftmost southbound lane," (3) had "failed to provide and install adequate flashing lights giving notice of the closing of the leftmost southbound lane" and (4) had "failed to adequately gradually taper traffic from the leftmost southbound lane into the center lane." In its operative answer, Arute pleaded the special defense of contributory negligence.

At the conclusion of the trial, the jury returned a plaintiff's verdict. Specifically, the jury concluded that the plaintiff had sustained damages in the amount of $1,537,868.62. It apportioned liability as follows: Arute, 65 percent; the plaintiff, 22 percent; Sayers, 12 percent; and Lent, 1 percent. The court accepted the verdict.

Thereafter, Arute filed a motion for judgment notwithstanding the verdict, a motion to set aside the verdict and a motion for remittitur. The court denied the motions and, after reducing the damages to account for contributory negligence and collateral source payments,[1] rendered judgment awarding the plaintiff $1,188,104.15, exclusive of costs. This appeal and cross appeal followed. Additional facts and procedural history will be provided as necessary.

---

[1] See General Statutes § 52-225a.

## I

## ARUTE'S APPEAL

## A

Arute claims that the court improperly refused to instruct the jury on the doctrine of superseding cause. We disagree.

The following additional facts and procedural history are relevant to our disposition of Arute's claim. During the trial, the court admitted evidence suggesting that (1) the collision between the plaintiff's vehicle and Sayers' vehicle had been caused by the failure of Sayers and Lent to drive their vehicles out of the left lane after the first collision, (2) the plaintiff had steered her vehicle into the left lane from the center lane moments before colliding with Sayers' vehicle and (3) generally, signs in the left lane or median of a highway are less visible to individuals driving in the center lane.

Thereafter, Arute filed a request to charge, asking the court to instruct the jury on the doctrine of superseding cause. See Practice Book § 16-21.[2] Specifically, Arute requested that the court include the following language in its instructions to the jury: "Defendant Arute Brothers, Inc., has argued that [it is] not liable for the plaintiff's injuries due to what is called a superseding or intervening cause. The law defines a superseding or intervening cause as an affirmative act or acts of another party or parties—the plaintiff and/or the other defendants in this case, which, breaks the chain of causation so as to be the sole proximate cause of the injuries: that is, the conduct of the plaintiff and/or the conduct of the other defendants in this case—can inter-

[2] Practice Book § 16-21 provides: "Any party intending to claim the benefit of the doctrines of supervening negligence, superseding cause, intervening cause, assumption of risk, or the provisions of any specific statute shall file a written request to charge on the legal principle involved."

vene or supersede so as to become the only proximate cause of the plaintiff's injuries so that even if defendant Arute Brothers, Inc., was negligent, [it] would not be liable because the other parties' conduct superseded [its] conduct as a substantial factor in causing the plaintiff's injury. You may find that the plaintiff's conduct alone superseded any or all of [Arute's] conduct, you may find that the other defendants' conduct superseded [Arute's] conduct, or you may find that a combination of the plaintiff's and other defendants' conduct superseded the conduct of defendant Arute Brothers, Inc. In other words, it is possible that two or more intervening forces may combine to create a superseding cause of the plaintiff's injuries. If you find that defendant [Arute's] conduct was superseded by the conduct of any or all of the other parties in this action then [it is] not liable for the plaintiff's injuries, and you must return a verdict for defendant Arute Brothers, Inc."

The court declined to instruct the jury on superseding cause. Arute later took an exception to that ruling.

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 179, 700 A.2d 38 (1997). Accordingly, "[p]roximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force." (Internal quotation marks omitted.) Id., 178. An "issue of proximate cause is ordinarily a question of fact for the trier." (Internal quotation marks omitted.) *Doe* v. *Manheimer*, 212 Conn. 748, 756, 563 A.2d 699 (1989), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995). "It becomes a conclusion of

law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier of fact." (Internal quotation marks omitted.) *Doe* v. *Manheimer*, supra, 757. Therefore, in the present case, the court's refusal to instruct the jury on the doctrine of superseding cause was proper only if a fair and reasonable person could not have concluded that Arute's negligence had been superseded by the acts of the plaintiff, Lent or Sayers, or any combination thereof. See also *Goodmaster* v. *Houser*, 225 Conn. 637, 648, 625 A.2d 1366 (1993) (" 'court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding' "). Before we address that threshold issue, we must review further the legal principles concerning superseding cause.

The terms "superseding cause" and "intervening cause" have been used interchangeably. *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 178. Regarding intervening cause, "[our Supreme Court has] adopted the standard set forth in § 442B of [2 Restatement (Second), Torts (1965)], that '[w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.' " *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 607–608, 662 A.2d 753 (1995).

" 'Our cases make it clear that, to be within the "scope of the risk," the harm actually suffered must be of the *same "general type"* as that which makes the defendant's conduct negligent in the first instance.' . . . Moreover, '[i]f the . . . [defendant's] conduct is a substantial factor in bringing about harm to another, the fact that

the . . . [defendant] neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent it from being liable.'" (Citation omitted; emphasis in original.) Id., 609–10.

In the present case, the court may have been required to instruct the jury on superseding cause if a fair and reasonable person could have reached the following conclusion: The harm suffered by the plaintiff was not within the scope of risk created by Arute's failure to post a flashing arrow and an adequate number of warning signs, and to taper the closure of the left lane. The harm suffered by the plaintiff, i.e., the severe foot injury, was incurred in an automobile accident. The general type of harm sought to be prevented by requiring contractors engaging in road construction to warn drivers of obstructions or restrictions to normal traffic flow is injury to persons (or damage to property) resulting from automobile accidents. See Regs., Conn. State Agencies § 14-298-553 ("[w]arning signs shall be used for the purpose of warning traffic of existing or potentially hazardous conditions either on or adjacent to the road"); Regs., Conn. State Agencies § 14-298-804 (a) ("[s]igns shall be placed in positions where they will convey their messages most effectively . . . . Signs shall be so placed that the driver will have adequate time for response"); Regs., Conn. State Agencies § 14-298-807 (c) ("[w]here any part of the roadway is obstructed or closed, construction approach warning signs are required to alert traffic well in advance of these obstructions or restrictions to normal traffic flow"). Thus, the scope of risk created by Arute's conduct includes personal injuries resulting from automobile accidents. See *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 609. Consequently, we conclude that a fair and reasonable person could not reasonably have concluded that the harm suffered by the plaintiff was not within the scope of the risk created by Arute's failures. Accord-

ingly, the jury could not reasonably have found that Arute's negligence had been superseded by the acts of the plaintiff, Lent or Sayers, or any combination thereof. See id., 607–608. We therefore conclude that the court properly refused to instruct the jury on the doctrine of superseding cause.

B

Arute also claims that the court improperly admitted expert testimony by Batterman indicating that Arute had failed to deploy warning signs, including a high mounted, internally illuminated flashing arrow, at the highway construction site where the plaintiff was injured. Specifically, Arute argues that Batterman's testimony failed to comport with standards of admissibility for expert scientific testimony as outlined in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587–89, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).[3] We conclude that Arute cannot prevail on this claim because it has failed to demonstrate that the challenged testimony was harmful.

The following facts and procedural history are relevant to Arute's claim. At the trial, the plaintiff called Batterman, a forensic engineer, as an expert witness. During voir dire, Batterman testified that he had reviewed the police accident reports as well as the depositions and witness statements that the plaintiff had provided him. Batterman testified that the accident report did not indicate that a flashing arrow had been posted in advance of the construction site. Similarly, Batterman testified that neither the deposition testimony nor the witness statements indicated the presence of a flashing arrow. On the basis of that information,

[3] In *State* v. *Porter*, 241 Conn. 57, 66–68, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), our Supreme Court adopted the standard for admissibility of scientific evidence as set forth by the United States Supreme Court in *Daubert*.

Batterman concluded that a flashing arrow had not been posted at the scene of the accident or any place prior to the scene of the accident in that general vicinity.

Arute, which previously had filed a motion in limine requesting that the court exclude Batterman's testimony, argued that his testimony failed to comport with standards of admissibility for expert scientific testimony as outlined in *Daubert*. The court denied Arute's motion and permitted Batterman to testify.

Batterman testified in the presence of the jury consistently with his testimony during voir dire. Additionally, Batterman testified that nobody had reported running over sandbags, signs or scaffolding. Therefore, in his opinion, Arute also had failed to deploy four or more plain arrow signs to taper the closure of the left lane.

The plaintiff also called Gurson Alexander, a human factors analyst,[4] as an expert witness. Alexander testified that he had reviewed the police accident reports, depositions of various witnesses, and the contract between Arute and the department of transportation. Regarding the flashing arrow, Alexander testified as follows: "It may be an overstatement to say that it's missing. What I believe is that if it was there, it was not turned on. It was not illuminated. And it in fact may have been missing. As I indicated earlier, that flashing arrow sign, and particularly at night, is very conspicuous. It is—the bulbs are yellow. They're bright and they flash. There's no question that if you were in the vicinity, you would see it. I mean, that's—everything we know underlines that. The fact that neither of the—none of the drivers said they saw it would indicate to me that it was either not there or not on."

---

[4] Alexander testified that "human factors is the science of the application of what we know about what people do well and not so well to the designs of things for their use. . . . It applies in the design of highways and how we transmit information to drivers."

Alexander also testified that it was "inconceivable" that (1) four or more plain arrow signs had been posted to taper the closure of the left lane, and that (2) those signs had been knocked down before Lent and Sayers approached the construction site in their vehicles. Alexander based his opinion on Lent's indication that he had seen one sign partially obstructing the left lane, and on the traffic control plan contained in the contract between Arute and the department of transportation.

Before addressing the merits of Arute's claim, we first set out the legal principles that guide our analysis. "[Our Supreme Court has] often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling 'would likely affect the result.'" (Citations omitted.) *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990). Additionally, "[i]t is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 211, 680 A.2d 1243 (1996).

In the present case, we assume arguendo that the court improperly admitted Batterman's testimony and consider whether Arute has satisfied its burden of demonstrating harm. We have reviewed Batterman's and Alexander's testimony, and conclude that Batterman's testimony was cumulative of Alexander's. On appeal, Arute does not challenge the court's decision to admit Alexander's testimony. Therefore, we presume that his testimony was validly admitted and, for the foregoing reasons, conclude that Arute has failed to satisfy its burden of demonstrating that Batterman's testimony

was harmful. Consequently, Arute can not prevail on its appeal.

## II

## PLAINTIFF'S APPEAL

The plaintiff claims that the court improperly refused to tax costs relating to the fee charged by her treating physician for the use of a videotape of his deposition testimony at the trial.[5] We disagree.

The following facts and procedural history are relevant to the plaintiff's claim. During the trial, the plaintiff sought to have a videotape of the deposition of Walther Bohne, the plaintiff's treating physician, admitted into evidence as expert testimony. The court admitted the videotape and allowed the jury to view it. Bohne, who did not attend court, never testified in person. Following the trial, the plaintiff filed an amended bill of costs, which included Bohne's fee of $5000 for the use of the videotape. Sayers and Lent each filed an objection, arguing that Bohne's fee was not taxable under our statutes. The court sustained the objections, and this appeal followed.

"It is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute. . . . Furthermore, because '[c]osts are the creature of statute . . . unless the statute clearly provides for them courts cannot tax them.' " (Citation omitted.) *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 715, 674 A.2d 845 (1996). Thus, the plaintiff's claim raises an issue of statutory construction over which

---

[5] The plaintiff also claimed that the court improperly refused to instruct the jury on the doctrine of acting in concert. In her brief and during oral argument, she requested, however, that we refrain from considering that claim unless Arute prevails in its appeal and a new trial is ordered. We grant the plaintiff's request and do not consider that claim.

our review is plenary. See *Polizos* v. *Nationwide Mutual Ins. Co.*, 255 Conn. 601, 607, 767 A.2d 1202 (2001). When construing a statute, we recognize that it should " 'be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law.' " *M. DeMatteo Construction Co.* v. *New London*, supra, 715.

Two statutes are relevant to our inquiry: General Statutes §§ 52-257 and 52-260. Subsections (a) and (b) of § 52-257 set forth the costs available to the prevailing party in a civil action in which the matter in demand is not less than $15,000. Subsection (b) provides in relevant part: "Parties shall also receive: (1) For each witness *attending* court, his *legal fee* and mileage . . . ." (Emphasis added.) General Statutes § 52-257 (b). Subsection (b) expressly provides that a court can tax costs for witnesses who attend court, but it is silent regarding witnesses who do not attend court, as is subsection (a). See General Statutes § 52-257 (a) and (b). Because neither subsection clearly provides that the costs for witnesses who do not attend court are taxable, a court cannot tax costs for a witness who does not attend court. See *M. DeMatteo Construction Co.* v. *New London*, supra, 236 Conn. 715.

Section 52-260 (f) authorizes a reasonable fee for a practitioner of the healing arts who gives expert testimony (practitioner).[6] It does not address whether a fee can be taxed for a practitioner who does not attend court. Nonetheless, § 52-260 (f) should be interpreted with regard to subsections (a) and (b) of § 52-257 because the legislature is presumed to have created a

---

[6] General Statutes § 52-260 (f) provides in relevant part: "When any practitioner of the healing arts as defined in section 20-1 . . . is summoned to give expert testimony in any action or proceeding, the court shall determine a reasonable fee to be paid to the practitioner of the healing arts . . . and taxed as part of the costs in lieu of all other witness fees payable to the practitioner of the healing arts . . . ."

consistent body of law. See id., 715. Consequently, unless the practitioner attends court, the court cannot tax the fee prescribed by § 52-260 (f). See also id., 717 ("[b]y its express terms, § 52-260 [f] treats as taxable only those costs that arise from an expert's testimony at trial"). For the foregoing reasons, we conclude that the court properly refused to tax costs relating to the fee charged by Bohne for the use of a videotape of his deposition testimony at the trial. Consequently, the plaintiff can not prevail on her appeal.

The judgment is affirmed.

In this opinion the other judges concurred.