[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I
 PROCEDURAL HISTORY
On September 13, 1999, the plaintiff, Margaret Aherne, filed a seven-count complaint against the defendants Lifeline Systems, Inc., and St. Raphael Hospital.[1] This action arises from the alleged malfunctioning of a Lifeline monitoring system. On January 8, 1999, Aherne fell in her home, lacerating her leg in the process. Aherne, who was living alone at the time, was unable to get up under her own power or summon assistance, and therefore remained on the floor for two days before being discovered by her daughter-in-law Gretchen Aherne.
At the time of her fall, Aherne subscribed to the defendant Lifeline's monitoring system. This system consisted of a table console unit and a device worn around Aherne's neck, both of which contained a button that when pressed would send a signal to Lifeline, alerting it of a possible emergency. Upon receiving a signal, Lifeline was to contact certain individuals designated by Aherne on her "responder list," who would then go to her home and check to see if she needed aid. Also, the individuals on the responder list were to be contacted if Aherne did not "check in" by activating the system at two designated times during the day.
Aherne allegedly learned of the Lifeline system through a promotion conducted by the defendant St. Raphael. Subsequently, Aherne entered into an agreement with St. Raphael dated January 27, 1989, whereby St. Raphael agreed to provide and service a Lifeline system that was to be monitored by the defendant Lifeline. At the time of the accident, Aherne was paying $50.00 per month to St. Raphael as a subscription fee for the Lifeline system. Of the $50.00 that St. Raphael received, between $15.00 and $20.00 was forwarded to Lifeline. The exact nature of the relationship between St. Raphael and Lifeline is in dispute, however, the agreement Aherne entered into provides that St. Raphael is to arrange for CT Page 4062 monitoring services to be provided by Lifeline.
Aherne alleges that she attempted to summon help after she fell by repeatedly pushing the button on the device worn around her neck. It is further alleged that despite activating the system Lifeline did not respond. This caused Aherne to remain on the floor for two days, bleeding and in a great deal of pain, without aid or medical attention. Aherne also asserts that Lifeline failed to contact any of the people on her responder list when she did not "check in" at the designated times during those two days.
Counts one through five of Aherne's December 18, 2000 amended revised complaint are directed toward Lifeline and allege breach of contract, negligence, misrepresentation, intentional infliction of emotional distress and negligent infliction of emotional distress respectively. Counts six through eight are directed toward St. Raphael and allege negligence, misrepresentation and breach of contract respectively. Count one was withdrawn on September 23 2002, subsequent to Lifeline's August 31, 2002 motion for summary judgment.
Aherne died on July 1, 2001. On June 18, 2002 her daughter Elizabeth Burbank was substituted as party plaintiff. St. Raphael filed its motion for summary judgment on July 15, 2002. Lifeline filed a separate motion for summary judgment on September 3, 2002. Aherne filed objections on August 23, 2002 and September 23, 2002. This matter appeared on the short calendar on December 2, 2002.
St. Raphael moves for summary judgment as to all counts against it on the ground that it is entitled to judgment as a matter of law based on disclaimers of liability contained in the contract entered into with Aherne. Also, St. Raphael claims that Aherne's tort claims (counts six and seven) are barred by the applicable statute of limitations. In support of its motion, St. Raphael submits a memorandum of law. Also in support, St. Raphael submits the affidavit of Robert Laplaca, attorney for St. Raphael, to which is attached an unauthenticated copy of the "Lifeline Central Subscriber Agreement" entered into between Aherne and St. Raphael; an unauthenticated copy of the "Hospital of St. Raphael Lifeline Emergency Response System Subscriber Responsibilities and Assumption of Risk" agreement; an uncertified deposition transcript of Elizabeth Burbank; a copy of Aherne's response to St. Raphael's first request for admission; an uncertified deposition transcript of Gretchen Aherne; and a copy of Aherne's responses to St. Raphael's first request for production: a copy of Aherne's response to St. Raphael's third set of interrogatories; and an unauthenticated copy of the alarm history of Aherne's Lifeline unit covering the period December 1, 1998 through CT Page 4063 December 31, 1998.
Lifeline moves for summary judgment as to all counts against it on the ground that it is entitled to judgment as a matter of law because there is no evidence supporting the allegations of negligence, misrepresentation, or intentional or negligent infliction of emotional distress. Lifeline also asserts that there exists no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Finally, Lifeline claims that Aherne's tort claims are barred by the applicable statute of limitations. In support of its motion, Lifeline submits the affidavit of Janice L. Morison, who is the manager of Risk and Legal Services for Lifeline: an unauthenticated copy of the "Lifeline Central Subscriber Agreement" entered into between Aherne and St. Raphael; an authenticated copy of the "Lifeline Central Program Monitoring Agreement" entered into between Lifeline and St. Raphael; an authenticated copy of the alarm history of Aherne's Lifeline unit covering the period November 1, 1998 through December 31, 1998; an uncertified deposition transcript of Gretchen Aherne; an unauthenticated letter from William Cihak, M.D.; an unauthenticated medical record from Middlesex Hospital; an unauthenticated copy of the alarm history of Aherne's Lifeline unit covering the period December 1, 1998 through December 31, 1998; and what appears to be an uncertified deposition transcript of Elizabeth Burbank.
In response, Aherne argues that St. Raphael's motion should be denied because the contractual disclaimer on which St. Raphael relies should not be given effect. With regard to Lifeline's motion, Aherne argues that it should be denied because the evidence raises a genuine issue of material fact as to whether Lifeline was negligent in its conduct toward Aherne. As to the statute of limitations arguments, Aherne claims that both parties engaged in a continuing course of conduct that tolled the statute of limitations. In support, Aherne submits a memorandum of law; the affidavit of Alinor C. Sterling, attorney for Aherne; an unauthenticated videotape of an interview between Aherne and Attorney Steven J. DeFrank; an unauthenticated transcript of the aforementioned interview; an uncertified deposition transcript of Gretchen Aherne; an uncertified deposition transcript of Joy Balsamo; an uncertified deposition transcript of Elizabeth Burbank; and an unauthenticated copy of the Lifeline user's manual.
 II DISCUSSION
"Practice Book § [17-49] provides that summary judgment shall be CT Page 4064 rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Gaynor v.Payne, 261 Conn. 585, 590, 840 A.2d 170 (2002). "[T]he `genuine issue' aspect of summary judgment requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred . . . A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) Buell Industries, Inc. v.Greater New York Mutual Ins. Co., 259 Conn. 527, 556, 791 A.2d 489
(2002). "Summary judgment procedure is especially ill-adapted to negligence cases, where . . . the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation . . . [T]he conclusion of negligence is necessarily one of fact . . ." (Citations omitted: internal quotation mark omitted.) Michaud v. Gurney,168 Conn. 431, 434, 362 A.2d 857 (1975).
Several items of uncertified and unauthenticated documentary evidence have been submitted to the court. "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) Great Country Bank v. Pastore,241 Conn. 423, 436, 696 A.2d 1254 (1997). For this reason, Practice Book § 17-46 provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto." "[U]ncertified copies of documents to which no affidavit exists attesting to their authenticity . . . do not constitute proof of documentary evidence for purposes of a motion for summary judgment." Olivas v. DeVivo Industries, Inc., Superior Court, judicial district of Danbury. Docket No. CV 99 0335908 (July 26, 2002, Holden, J.).
In the present case. St. Raphael and Aherne have submitted affidavits CT Page 4065 by their respective attorneys, Robert Laplaca and Alinor C. Sterling. These affidavits have presumably been submitted in order to authenticate the various items of documentary evidence attached thereto. These affidavits, however, do not purport to be made on personal knowledge and thus do not have the effect of authenticating the evidence submitted. Furthermore, "an affidavit by a party's attorney should not be used to oppose a summary judgment motion . . ." (Citation omitted.)2830 Whitney Avenue Corp. v. Heritage Canal Development Associates, Inc.33 Conn. App. 563, 567-68, 636 A.2d 1377 (1994).
With regard to the unauthenticated evidence submitted by St. Raphael, the depositions of Elizabeth Burbank and Gretchen Aherne will nonetheless be considered because St. Raphael and Aherne have both submitted uncertified copies of these depositions, and because neither has objected to their submission. (Affidavit of Robert Laplaca, Exhibits C, E; Aherne's Objection to Motion for Summary Judgment, dated August 23, 2002, Exhibits C, E.) Also, the "Lifeline Central Subscriber Agreement" and the "Hospital of St. Raphael Lifeline Emergency Response System Subscriber Responsibilities and Assumption of Risk" document will be considered. Although these documents have not been authenticated, it is undisputed that Aherne executed these agreements. Furthermore, these agreements are referenced (although not attached) in St. Raphael's First Requests for Admission, wherein Aherne admits to having executed them. Finally, the alarm history of Aherne's Lifeline unit covering the period December 1, 1998 through December 31, 1998 will not be considered. (Affidavit of Robert Laplaca, Exhibit H.)
Of the uncertified evidence submitted by Aherne, the videotape and transcript of the interview between herself and Attorney Steven DeFrank will not be considered. (Aherne's Memorandum, Exhibits A, B.) Although General Statutes § 52-172 allows declarations of the deceased to be received as evidence in actions by or against the representatives of the deceased, this does not eliminate the requirement that all evidence must be authenticated. Because no one with personal knowledge has verified that this video is a fair and accurate depiction of that which it portrays, it is inadmissible. The deposition of Joy Balsamo will also not be considered because it is not certified. "[T]he trend in the Superior Courts is to consider certified but not uncertified, deposition testimony when ruling on a motion for summary judgment." Michaud v. Beckman, Superior Court, judicial district of New Haven at Meriden, Docket No. CV 99 0268302 (May 15, 2002, Wiese, J.). For the reasons stated above, however, the uncertified depositions of Gretchen Aherne and Elizabeth Burbank will be considered. Finally, the Lifeline User's Manual will not be considered. CT Page 4066
Lifeline has submitted with its memorandum the affidavit of Janice Morison, Manager of Risk and Legal Services for Lifeline, attesting to the authenticity of Lifeline's exhibits B and C. These exhibits consist of the "Lifeline Central Program Monitoring Agreement" and the alarm history of Aherne's Lifeline unit covering the period November 1, 1998 through December 31, 1998.[2] As to Lifeline's uncertified evidence, for the reasons previously discussed, the "Lifeline Central Subscriber Agreement," Gretchen Aherne deposition and Elizabeth Burbank deposition will all be considered. Exhibits F and G consist of unauthenticated medical records and will not be considered.
HOSPITAL v. ST. RAPHAEL — MOTION FOR SUMMARY JUDGMENT #136
 Contractual Disclaimers of Liability
St. Raphael argues that all of Aherne's claims against it are barred by the disclaimers of liability agreed to in the "Lifeline Central Subscriber Agreement" (Subscriber Agreement) and the "Subscriber Responsibilities and Assumption of Risk" agreement (Responsibilities Agreement) and therefore it is entitled to summary judgment. Specifically, St. Raphael references the language contained in the section of the Subscriber Agreement entitled "Exclusions and Limitations of Program's Liability" that states:[3]
It is understood and agreed by the parties hereto that neither [St. Raphael] nor [Lifeline] is an insurer and that insurance, if any, covering personal injury and property loss or damage on any Subscriber's premises shall be obtained by the Subscriber: that [St. Raphael] is being paid to monitor a system designed to reduce certain risks of loss and that the amounts being charged by [St. Raphael] are not sufficient to guarantee that no loss will occur; that neither [St. Raphael] nor [Lifeline] is assuming responsibility for any losses which may occur even if due to [St. Raphael]'s or [Lifeline]'s negligent performance or failure to perform any obligation under this agreement. Neither [St. Raphael] nor [Lifeline] makes any representation or warranty, including any implied warranty of merchantability or fitness, that the system installed by [St. Raphael] or service supplied by [St. Raphael] or [Lifeline] may not be compromised, or that the services will in all cases provide the protection which is intended.
(Affidavit of Robert Laplaca, Exhibit A.)
In response, Aherne argues that summary judgment should not be granted because the disclaimer is invalid. As a basis for this argument, Aherne claims that the disclaimer is unconscionable and against public policy. CT Page 4067 Also, Aherne argues that the contract with St. Raphael contains misrepresentations that render it voidable, thus negating the effect of the disclaimer clause.
The dispute between Aherne and St. Raphael is governed by Massachusetts law. The Subscriber Agreement contains a choice of law provision stating: "This agreement shall be subject to and governed by the laws of the Commonwealth of Massachusetts." Connecticut has abandoned the lex loci contractus approach to choice of law and instead has "adopted the `most significant relationship' approach of the Restatement (Second) of Conflict of Laws, for analyzing choice of law issues involving contracts." Interface Flooring Systems, Inc. v. Aetna Casualty Surety Co., 261 Conn. 601, 608, 804 A.2d 201 (2002). "[I]n accordance with § 187 of the Restatement . . . parties to a contract generally are allowed to select the law that will govern their contract, unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . ." (Internal quotation marks omitted.) Elgar v.Elgar, 238 Conn. 839, 850, 679 A.2d 937 (1996).
Massachusetts has a relationship to the present case because the agreement entered into between Aherne and St. Raphael concerns a device that is produced by a company located in Massachusetts.[4]
Furthermore, the parties have offered no reason why the application of Massachusetts law would be contrary to the fundamental policy of Connecticut. In fact, the parties seem to concede that Massachusetts law applies as they have cited Massachusetts cases in their briefs.
"If a contract . . . is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment . . . Where, however, the contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial." (Citations omitted.) SeacoInsurance Co. v. Barbosa, 435 Mass. 772, 779, 761 N.E.2d 946 (2002). "Contract language is ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." (Internal quotation marks omitted.)Suffolk Construction Co. v. Lanco Scaffolding Co., 47 Mass. App. 726,729, 716 N.E.2d 130 (1999). "A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Citation InsuranceCT Page 4068Co. v. Gomez, 426 Mass. 379, 381, 688 N.E.2d 951 (1998).
In the present case, the agreement between the parties consisted of two signed documents. The two documents, the Subscriber Agreement and the Responsibilities Agreement, "must be read together to effectuate the intention of the parties." Chase Commercial Corp. v. Owen,32 Mass. App. 248, 250, 588 N.E.2d 705 (1992). See also ChelseaIndustries Inc. v. Florence, 358 Mass. 50, 55, 260 N.E.2d 732 (1970). An ambiguity exists when two documents that are part of a single agreement contain conceivably inconsistent terms. Katz v. Belko, 16 Mass. App. 178,181, 450 N.E.2d 630 (1983).
St. Raphael has cited several clauses in the two documents that it asserts constitute a disclaimer of liability barring Aherne's claims against it. In addition to the language cited by St. Raphael, there is a clause in the Responsibilities Agreement that states: "The Hospital is not responsible for defects or malfunctions in such equipment unlesscaused by its own negligence." (Emphasis added.) (Affidavit of Robert Laplaca, Exhibit B.) This clause is seemingly in conflict with the term of the Subscriber Agreement stating that St. Raphael is not responsible "for any losses which may occur even if due to [St. Raphael]'s or [Lifeline]'s negligent performance or failure to perform any obligation under this agreement.' (Affidavit of Robert Laplaca, Exhibit A.) The Subscriber Agreement attempts to absolve St. Raphael of all liability that could possibly arise. The Responsibilities Agreement, on the other hand, acknowledges that St. Raphael may be liable for negligence in certain circumstances.
Although the application of a disclaimer of liability would normally present a question of law for the court to decide, the disclaimer in the present case cannot yet be addressed because of underlying questions of fact. The conflicting terms of the two documents creates an ambiguity. Because of this ambiguity, there is a question of fact as to what the parties intended upon entering into this agreement. This question must be resolved by a jury, and therefore summary judgment is inappropriate.
 Statute of Limitations
St. Raphael also claims that summary judgment should be granted in its favor as to the tort claims against it (counts six and seven) because they are barred by the statute of limitations. As to count six, which sounds in negligence, the applicable statute of limitation is General Statutes § 52-584. Section 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within CT Page 4069 two years from the date when the injury is first sustained or discovered . . . except that no such action may be brought more than three years from the date of the act or omission complained of . . ." "General Statutes § 52-584 is the statute of limitations applicable in an action to recover damages for injury to the person or property caused by negligence . . . That statute imposes two specific time requirements on prospective plaintiffs. The first requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered . . . The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of . . . The statutory clock on this three year time limit begins running when the negligent conduct of the defendant occurs." (Internal quotation marks omitted.) Johnson v. North Branford,64 Conn. App. 643, 648, 781 A.2d 346, cert. denied. 258 Conn. 926,783 A.2d 1028 (2001).
As to count seven, which sounds in misrepresentation, the applicable statute of limitation is General Statutes § 52-577. Krondes v.Norwalk Savings Society, 53 Conn. App. 102, 113, 728 A.2d 1103 (1999). Section 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." (Internal quotation marks omitted.) Collum v. Chapin, 40 Conn. App. 449, 451,671 A.2d 1329 (1996). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Id.
In the present case, Aherne allegedly sustained her injuries when she fell in her home on January 8, 1999, and there was no response to her activation of the Lifeline system. This action against St. Raphael commenced on August 18, 1999. The acts or omissions complained of by Aherne in counts six and seven include, inter alia, that St. Raphael, up to and including January 8, 1999, made representations concerning the performance of the system when it knew or should have known that it would not function properly; that St. Raphael, up to and including January 8, 1999, failed to properly investigate Lifeline's history and performance record; and that St. Raphael, up to and including January 8, 1999, failed to provide proper installation and/or maintenance to Aherne's Lifeline system. St. Raphael argues, on the other hand, that the only acts or omissions complained of took place more than ten years prior to the commencement of the action. It is argued that there is no evidence of any CT Page 4070 representations, promotions or advertisements after January 27, 1989, the date the parties executed their agreement, thus barring Aherne's tort claims. In support of this argument, St. Raphael claims that Aherne has admitted in her responses to St. Raphael's third set of interrogatories that she has no evidence of any representations, documents, promotions or advertisements after January 27, 1989. (Affidavit of Robert Laplaca, Exhibit G, interrogatory response No. 3.)
The interrogatory relied upon by St. Raphael does not constitute conclusive proof. "A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Internal quotation marks omitted.) Pedersenv. Vahidy, 209 Conn. 510, 519-20, 552 A.2d 419 (1989). "[A] response to an interrogatory [however] is not a judicial admission in the same sense as admissions in the pleadings or in open court." Piantedosi v. Florida,186 Conn. 275, 278, 440 A.2d 997 (1982). "When either party in any action has obtained from the other party a disclosure on oath, respecting the matters alleged in any pleading, the disclosure shall not be deemed conclusive, but may be contradicted like any other testimony." General Statutes § 52-200. Furthermore. St. Raphael misstates the contents of the interrogatory. Aherne makes no admissions in the interrogatory, but rather answers that she "does not remember." (Affidavit of Robert Laplaca, Exhibit G, interrogatory response No. 3.) St. Raphael has submitted no proof as to when the act or omission complained of occurred, and therefore has failed to satisfy its burden on a motion for summary judgment. Because there is a genuine issue of material fact as to when the act or omission complained of occurred, the court must deny the motion for summary judgment.
SYSTEMS, INC. v. LIFELINE — MOTION FOR SUMMARY JUDGMENT #142
Lifeline argues that summary judgment should be granted in its favor as to counts two through five on the basis that Aherne has adduced no evidence to support the allegations contained in those counts. (Lifeline's Memorandum of Law, dated August 30, 2002, p. 4.) This argument misplaces the burden on the plaintiff. On a motion for summary judgment, "[t]he movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Emphasis added: internal quotation marks omitted.) Morascini v. Commissioner of Public Safety, 236 Conn. 781,808-09, 675 A.2d 1340 (1996). Furthermore, Aherne has in fact submitted evidence to support her allegations.
As to count two, which sounds in negligence, Lifeline argues that it is entitled to summary judgment as a matter of law because Aherne cannot CT Page 4071 satisfy her burden of proof on the elements of duty and proximate cause. Specifically, Lifeline argues that because it never received a signal from Aherne on the date she fell, it had no duty to aid her. Also, Lifeline argues that there is no act, or failure to act, on its part that could have been the proximate cause of Aherne's fall and attendant injuries.
"In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail." LaFlamme v. Dallessio,261 Conn. 247, 251, 802 A.2d 63 (2002). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . Contained within the first element, duty, there are two distinct considerations . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty." (Internal quotation marks omitted.) Baptiste v. Better Val-U Supermarket, Inc.,262 Conn. 135, 138, 811 A.2d 687 (2002).
"Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action." (Internal quotation marks omitted.) LaFlamme v. Dallessio,supra, 261 Conn. 251. Ordinarily the determination of whether a duty exists is a question of law, however, "under some circumstances, the question involves elements of both fact and law." Id. "The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised." (Internal quotation marks omitted.) Perodeau v. Hartford, 259 Conn. 729, 754, 792 A.2d 752 (2002).
"The test of proximate cause is whether the defendant's conduct is a substantial factor in producing the plaintiff's injury. The substantial factor test asks, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Internal quotation marks omitted.) Cram v. Driscoll, 262 Conn. 312,331, 813 A.2d 1003 (2003). "The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence . . . In applying this test, we look from the injury to the negligent act complained of for the necessary causal connection." (Internal quotation marks omitted.)Id. "An issue of proximate cause is ordinarily a question of fact for the trier . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier of fact." (Citations omitted; internal quotation marks omitted.)Ludington v. Sayers, 64 Conn. App. 768, 773-74, 778 A.2d 262 (2001). CT Page 4072
Because genuine issues of material fact exist as to the foreseeability of Aherne's injuries, summary judgment must be denied. Despite Lifeline's claim that it owed no duty to Aherne until a signal was received, a jury could reasonably find that it was foreseeable that the system would not transmit signals properly, thus leaving Aherne injured and without aid for an extended period of time. Evidence has been submitted from which it could be found that Aherne relied almost exclusively on the Lifeline system to provide her with aid should she fall or otherwise need medical care. Aherne had utilized the system on several occasions when in need of medical assistance. (Aherne's Objection to Motion for Summary Judgment, dated August 23, 2002, Exhibit C, pp. 45-46.) Also, there is evidence from which a jury could find that Aherne activated her Lifeline system on the occasion in question. According to Aherne's daughter-in-law, Gretchen Aherne, after her fall Aherne said that she "kept pressing the button and nobody came." Id., 19. Aherne also asked several times after her accident why the system didn't work. Id., 52.[5] Furthermore. Gretchen Aherne stated that the button for the Lifeline system was still around Aherne's neck when she was finally discovered on the floor in her house and when she was taken to the emergency room afterwards. Id., 19, 101.
From this evidence, a jury could reasonably determine that should the system malfunction or not be properly monitored, Aherne would foreseeably remain without assistance in a time of need, thus causing greater injuries. It is not relevant to the issue of foreseeability whether a signal was in fact received, because it is nonetheless foreseeable that a situation may arise where the system would not properly transmit a signal and cause Aherne to suffer an injury.
Even accepting as true Lifeline's argument that it owed no duty to Aherne unless it received a signal from her Lifeline unit, summary judgment still must be denied. Lifeline relies on a copy of Aherne's alarm history, which it claims contains no entry for the date in question. (Lifeline's Memorandum of Law, dated August 30, 2002. Exhibit C.) Lifeline claims that had a signal been received, it would have automatically been recorded on the alarm history by Lifeline's computer system. This evidence has been contradicted by the evidence discussed above that Aherne activated her system at the time of her fall. A jury could reasonably determine that since the system was activated, Lifeline did in fact receive a signal and was obligated to respond. Therefore summary judgment as to count two of Aherne's Amended Revised Complaint is denied.
Lifeline next claims that it is entitled to judgment as a matter of law as to count three, which sounds in misrepresentation, because Aherne can proffer no evidence of the alleged misrepresentations. "[E]ven an innocent CT Page 4073 misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know or has the duty of knowing the truth." (Internal quotation marks omitted.) Williams Ford Inc. v. HartfordCourant Co., 232 Conn. 559, 575, 657 A.2d 212 (1995). In Connecticut, "[a] person is subject to liability for an innocent misrepresentation if in a sale, rental or exchange transaction with another, [he or she] makes a representation of material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it . . . even though it is not made fraudulently or negligently." (Internal quotation marks omitted.) Gibson v. Capano, 241 Conn. 725, 730, 699 A.2d 68 (1997). The elements for a cause of action in innocent misrepresentation are "(1) a representation of material fact, (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages. (Internal quotation marks omitted.) Matyas v. Minck,37 Conn. App. 321, 333, 655 A.2d 1155 (1995).
Aherne has submitted evidence establishing a genuine issue of material fact as to whether Lifeline made any misrepresentations. Before making her purchase, Aherne received and reviewed material concerning the Lifeline system. (Aherne's Objection to Motion for Summary Judgment, dated August 23, 2002, Exhibit C. p. 35.) Also, Aherne maintained a file on her Lifeline system that contained a brochure and a user's manual. (Aherne's Objection to Motion for Summary Judgment, dated August 23, 2002, Exhibit E, p. 67.) From this evidence, it could reasonably be determined that Aherne relied on false representations in purchasing her Lifeline system. Lifeline has submitted no countervailing evidence. There is no evidence from which it could be determined that either no representations were made, or that representations which were made were not false. Therefore summary judgment is denied as to count three of Aherne's Amended Revised Complaint.
In counts four and five, Lifeline alleges intentional and negligent infliction of emotional distress. Lifeline argues that summary judgment should be granted as to these two counts because Aherne has not submitted evidence of any act, or failure to act, on the part of Lifeline that was extreme and outrageous. As previously stated, Lifeline has misplaced the burden on Aherne.
To establish a claim for intentional infliction of emotional distress, the plaintiff must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained CT Page 4074 by the plaintiff was severe." (Internal quotation marks omitted.) Carrolv. Allstate Insurance Co., 262 Conn. 433, 443 (2003). Connecticut courts have continually held that "in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. (Internal quotation marks omitted.) Id., 446.
As previously discussed, Aherne has submitted evidence that she fell while alone in her home, that she activated her Lifeline system for assistance, and that Lifeline did not respond. Furthermore, Aherne has submitted evidence that she lay bleeding on the floor in her home without assistance, until she was discovered by her daughter-in-law Gretchen Aherne two days later. (Aherne's Objection to Motion for Summary Judgment, dated August 23, 2002, Exhibit C, p. 108.) In the absence of any countervailing evidence, it could be found that, based on the evidence submitted, Lifeline's conduct was extreme and outrageous. Therefore summary judgment as to counts four and five of Aherne's Amended Revised Complaint is denied.
Finally. Lifeline argues that counts two through five are barred by the statute of limitations. On this ground, Lifeline adopts, in its entirety, the statute of limitations argument set forth by St. Raphael. The claims against Lifeline, however, are in many ways dissimilar from those against St. Raphael.
With regard to count three, which sounds in misrepresentation, the analysis is the same as that applied to the misrepresentation count against St. Raphael: there is a genuine issue of material fact as to when the act or omission complained of occurred because Lifeline has failed to satisfy its evidentiary burden. With regard to counts two, four and five, which sound in negligence, intentional infliction of emotional distress and negligent infliction of emotional distress, St. Raphael's statute of limitations argument provides no support. The acts complained of in these counts, unlike the counts against St. Raphael, all occurred on or about the date of Aherne's fall, January 8, 1999. Action was then commenced against Lifeline on August 20, 1999, well within the time requirements of both § 52-577 and § 52-584. Lifeline has presented no countervailing evidence to dispute these dates. Because Aherne's claims against Lifeline were brought within the statute of limitations, summary judgment is denied. CT Page 4075
 CONCLUSION
Because genuine issues of material fact exist, summary judgment is denied as to both St. Raphael and Lifeline.
 BY THE COURT Peter Emmett Wiese, Judge